Filed 6/22/21  In re Brianna M. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re BRIANNA M., A Person Coming Under the Juvenile Court Law. | B308403 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSE M.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 18CCJP05573B |

APPEAL from an order of the Superior Court of Los Angeles County, Debra Losnick, Judge. Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

Jose M. (father) appeals from the juvenile court's jurisdiction finding and disposition order declaring his nine-year-old daughter a dependent of the court. Father contends insufficient evidence supports the court's finding that his history of substance abuse and continued use of methamphetamine render him incapable of providing his daughter regular care and supervision. Father also challenges the court's disposition order removing his daughter from his custody, and he contends the court failed to make necessary findings under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    The Family's Background

Brianna was born in 2011. Brianna's mother left the family around 2015. Since then, father has raised Brianna with help from other family members.

In August 2018, the Department of Children and Family Services (Department) received a referral alleging Brianna was the victim of general neglect. The caller reported seeing the child wearing " 'skimpy' " and "revealing" clothing while walking around the neighborhood unattended. The Department interviewed Brianna's relatives, who reported father used crystal methamphetamine. An aunt once saw a white rock fall from father's pocket, and an uncle found drug pipes in father's home. Father would often spend hours alone in a bathroom where he would use drugs. Father also would leave Brianna alone with her paternal grandfather, who the family knew was an alcoholic and was often under the influence while watching the child. Relatives

2

also reported that father had not enrolled Brianna in school during the spring of 2018.

In December 2018, the juvenile court sustained a dependency petition filed on Brianna's behalf under Welfare and Institutions Code[1] section 300, subdivision (b), finding father endangered the child by using methamphetamine while she was in his care and by leaving the child unattended with her grandfather while he was under the influence of alcohol. The court declared Brianna a dependent and ordered the Department to provide father reunification services.

In 2019, father completed a substance abuse program and, between July and November of that year, tested clean more than 15 times without any positive drug tests. He also completed a parenting program and individual counseling. In January 2020, the court terminated jurisdiction over Brianna and awarded father sole legal and physical custody of the child.

## 2.    Initiation of the Underlying Dependency Proceedings

In August 2020, a neighbor who asked to remain anonymous reported that father started using marijuana and methamphetamine again shortly after Brianna was returned to his custody. Although the neighbor had never seen father use drugs, the neighbor knew father was "drugged" every day. According to one of the family's neighbors, father wouldn't feed Brianna until 4:00 in the afternoon. When the child was hungry, father would tell her to wait. Brianna often made cereal for herself when father didn't feed her.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

3

Shortly after receiving the referral, the Department interviewed father. He and Brianna were living in a motel where he also worked. The room where father and Brianna lived was clean, organized, and hazard-free. Father and Brianna shared a bathroom with other guests at the motel.

Father denied using any drugs since Brianna returned to his custody in January 2020. According to father, Brianna's hair was recently infested with lice while she was staying with her relatives. He was treating the lice with special shampoo.

Father claimed he always feeds Brianna. He usually buys her cereal, beans, plantains, eggs, and other foods. Although there are some days he tells her to wait before feeding her, he never makes her wait for a long time. Brianna was seeing a psychologist for her "behavior," but father couldn't provide any other details about Brianna's treatment. While father works, he usually has one of the motel's tenants, a woman who also has a young daughter, watch Brianna.

The Department also interviewed Brianna. She denied the neighbor's allegations. She's never seen father use drugs or found any drugs or paraphernalia around their home. Father always feeds her, and if he makes her wait, she'll eat cereal.

The day after he was contacted by the Department, father tested positive for methamphetamine. During a follow up interview, father stated that he knew his test would be positive. When asked why he denied using drugs during his initial interview, father responded, "I'm not going to say I was scared but I'm not going to say why." Father admitted he started using methamphetamine again about three or four months earlier, after he got fired from his previous job. He most recently used the drug two hours before the follow-up interview.

Father told the social worker that he wouldn't sign a safety plan or "anything" else for the Department. He then started speaking incoherently about unidentified people who wanted to hurt him.

Immediately after the follow-up interview, the Department detained Brianna from father's custody and placed her with paternal relatives. The Department filed a dependency petition, alleging father's history of substance abuse and continued use of methamphetamine rendered him incapable of providing Brianna regular care and supervision and endangered her physical health and safety (§ 300, subd. (b)).

At the detention hearing, the court found father was Brianna's presumed parent. The court also found the petition alleged a prima facie case under section 300, subdivision (b) and ordered Brianna to remain detained from father's custody.

**3.      Jurisdiction and Disposition**

In late September 2020, the Department interviewed father about his drug use. He began using methamphetamine in 2014, and it's the only drug he uses. Although he claimed he doesn't use methamphetamine often, he told the social worker he last used the drug the night before the interview. Father sometimes uses the drug with strangers at the motel, which he described as a "scary" experience. Father claimed he never uses the drug while Brianna is around.

Father believed he could stop using the drug if he quit working at the motel, which was a trigger for him because a lot of people with "not so good backgrounds" frequented the place. He was willing to do an inpatient treatment program, but he had yet to enroll in any services. Father failed to show up for a drug test scheduled about a week after the interview.

The Department also interviewed Brianna. She told the social worker she doesn't know what drugs are. Father would sometimes be in the bathroom for a long time, but Brianna didn't know what he was doing. According to the child, father didn't look strange or do anything weird when he'd come out of the restroom. She's seen father drink beer on occasion, "sometimes like at a party." He always acts normal whenever he drinks beer.

In late October 2020, the court held the jurisdiction and disposition hearing. The court sustained the petition, declared Brianna a dependent of the court, and ordered Brianna to remain removed from father's custody. The court directed the Department to provide father reunification services, including a full drug program with aftercare, weekly drug testing, individual counseling, and parenting classes.

Father appeals.

## DISCUSSION

Father contends insufficient evidence supports the court's jurisdiction finding. Father also argues the court prejudicially erred when it failed to state the facts on which its removal order was based. Lastly, father contends the court erred when it did not make a finding concerning ICWA's application to Brianna's case. As we explain, each of these arguments lacks merit.

## 1.    Substantial evidence supports the jurisdiction finding.

A juvenile court may exercise jurisdiction over a child if the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the parent's failure or inability to adequately supervise or protect the child. (§300, subd. (b)(1).) To establish jurisdiction under section 300, subdivision (b) due to a parent's substance abuse, the

Department must prove: (1) "substance abuse by a parent … , (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724–725.)

Risk to a child from substance abuse can be established in two ways: (1) through proof of " 'an identified, specific hazard in the child's environment,' " or (2) through proof that the child is of " 'tender years' "—i.e., six years old or younger—in which case a "finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766–767; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 (*Christopher R.*) [defining "tender years" as six years old or younger].)

To show the child faces a risk of harm at the time of the jurisdiction hearing, there "must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) In determining whether conduct is likely to recur, courts may consider evidence of the parent's behavior in the past. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) A parent's denial of wrongdoing or failure to recognize the negative impact of her conduct is also relevant to determining risk under section 300. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 735, fn. 4; see also *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [" '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.' "].)

We review a juvenile court's jurisdiction findings for substantial evidence. (*In re E.E.* (2020) 49 Cal.App.5th 195, 206 (*E.E.*).) We draw all reasonable inferences from the evidence to

support the court's findings. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We view the record in the light most favorable to the findings, and we don't evaluate the credibility of witnesses, weigh evidence, or resolve conflicts in the evidence. (*Ibid*.)

As a preliminary matter, father doesn't dispute that he abuses methamphetamine. Father admitted he has used the drug since 2014. His use of methamphetamine caused Brianna to be declared a dependent of the court and removed from his custody in the child's prior dependency case. Although father completed a drug program and regained custody of Brianna in early 2020, he relapsed only a few months later. Father lied about not using methamphetamine when the Department first contacted him in this case and, even after testing positive in August 2020, he continued to use the drug throughout the Department's investigation and missed a drug test shortly before the jurisdiction and disposition hearing. The court correctly found father abuses methamphetamine. (See *Christopher R., supra*, 225 Cal.App.4th at pp. 1218–1219.)

Father contends insufficient evidence supports the court's finding that his use of methamphetamine places Brianna at serious risk of harm. Specifically, father points out that Brianna has never suffered any harm while in his custody and the child is able to feed herself when father doesn't provide her food. We are not persuaded by father's argument.

The court reasonably could infer that father used methamphetamine while Brianna was under his supervision. Brianna has been in father's sole custody since January 2020. Father admitted he began using methamphetamine again around April 2020. Once the Department began investigating this case, father tested positive for methamphetamine on one occasion and

admitted to using the drug on two occasions while Brianna was in his care. Although father told the Department that he never used the drug while Brianna was around, the court was free to discredit that statement in light of the fact that father lied about not using any drugs when the Department began its investigation in this case. In any event, Brianna told the Department that while she was in his care, father would sometimes stay in the bathroom for hours at a time, the same behavior her relatives had seen father engage in while using methamphetamine.

That Brianna was nine years old—i.e., older than a child of tender years—does not negate the risk father's use of methamphetamine posed to her. As our colleagues in Division Eight recently explained in a case involving children ages 7 through 14, a parent's lack of supervision due to his or her drug use creates a serious risk of physical harm because "[c]hildren are immature, inquisitive, clever about escaping, and inexperienced with life's hazards. With impulsive urges and without much judgment about what could go wrong, children need supervision. … [D]isasters can strike swiftly and without warning." (*In re K.B.* (2021) 59 Cal.App.5th 593, 595, 602 (*K.B.*).) This risk is especially high when the child is in the custody of only one adult and that adult, like father, is often under the influence of drugs.

Brianna's immaturity aside, the context of father's drug use created a serious risk of harm to the child. Father told the Department that he frequently used methamphetamine at the motel where he and Brianna lived. Father would use the drug with strangers who came to the motel, which he described as a "scary" experience. According to father, many of the people he interacted with at the motel had "not so good backgrounds."

Father also told the Department that he and Brianna used one of the motel's common bathrooms—i.e., a bathroom that other people who frequented the motel could access. The court, therefore, reasonably could have inferred that father didn't just use methamphetamine while Brianna was in his care, but that he also used the drug while other methamphetamine users whom he didn't know were around the child. (See *In re I.J.* (2013) 56 Cal.4th 766, 773 [" 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' "].)

Also relevant to our analysis, the court in Brianna's prior dependency case found father's use of methamphetamine created a serious risk of harm to the child. Although father completed a drug treatment program as part of that case, he quickly relapsed, and began to use methamphetamine again within four months of regaining custody of Brianna. And, throughout the Department's investigation in this case, father continued to use methamphetamine and miss drug tests. In other words, not much has changed since the court last declared Brianna a dependent because of father's methamphetamine use. This evidence supports the court's jurisdiction finding. (See *E.E.*, *supra*, 49 Cal.App.5th at p. 213 [mother's past use of drugs was serious and supported the court's finding that her current use of drugs placed her children at risk of harm]; *In re L.W.* (2019) 32 Cal.App.5th 840, 850 [mother's past drug-related arrests showed her drug use bled into her personal life and created a substantial risk of harm to her child].)

And finally, father's evasiveness throughout the Department's investigation in this case supports jurisdiction. When the Department initially contacted father in August 2020,

10

he denied using any drugs since he regained custody of Brianna earlier that year. Although father later admitted he lied about not using drugs, he continued to use methamphetamine throughout the Department's investigation. He also missed a drug test in early October 2020, only a couple of weeks before the jurisdiction hearing, and he had not taken any steps to address his drug use before the court declared Brianna a dependent. (See *E.E.*, *supra*, 49 Cal.App.5th at p. 213 [mother's dishonesty about the extent of her drug use, missed drug tests, and failure to take any steps to address her drug use supports a finding that her substance abuse issues place the children at risk of harm].)

In short, substantial evidence supports the court's finding that father's use of methamphetamine placed Brianna at serious risk of physical harm.

**2.    Any error in the court's order removing Brianna from father's custody was harmless.**

Father next contends the court prejudicially erred when it didn't make necessary factual findings before removing Brianna from his custody. He argues it is reasonably probable that had the court made those findings and considered alternatives to removal, it wouldn't have removed Brianna from his custody. Again, we disagree.

Before removing a child from her parents' custody, the court must find by clear and convincing evidence that there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child if she were returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1).) The court must determine whether reasonable efforts were made to prevent removal and state on the record the facts on which it bases its

11

decision to remove the child from her home. (§ 361, subd. (e).) We review a removal order to determine whether there is substantial evidence from which a reasonable fact finder could have found it highly probable that the facts supporting removal were true. (*K.B.*, *supra*, 59 Cal.App.5th at p. 605; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996 [clarifying standard of review for factual findings that must be made by clear and convincing evidence].)

When it removed Brianna from father's custody, the court didn't identify any facts supporting removal or make any findings concerning whether there were reasonable means to prevent removal. Instead, the court simply incorporated in its minute order standard language commonly used by the dependency courts when removing children from their parents' custody. As this court has previously explained, that commonly used language "is not a replacement for a statement of the facts supporting the court's decision to remove a child from a parent's custody." (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1067 (*D.P.*).) The court therefore erred when it did not state the facts supporting its decision to remove Brianna from father's custody.

"Like other rulings of the trial court, when a juvenile court fails to make the factual findings required under section 361, subdivision (e), its removal order is subject to the constitutional mandate that no judgment shall be set aside 'unless, after an examination of the entire cause, including the evidence, the [appellate] court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citations.] Under this mandate, a 'miscarriage of justice' will be declared only when the appellate court, after examining the entire case, is of the opinion that ' "it is reasonably probable that a result more favorable to

12

the appealing party would have been reached in the absence of the error." ' [Citation.] A ' "probability" in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' [Citation.]" (*D.P.*, *supra*, 44 Cal.App.5th at p. 1068.)

It is not reasonably probable the court would have found Brianna could safely be returned to father's custody had it complied with the requirements of section 361, subdivision (e). As we explained above, father has serious unresolved issues with substance abuse. He started to use methamphetamine again shortly after Brianna was returned to his sole custody. He lied about not using the drug when the Department first contacted him in August 2020, and he continued to use the drug and miss drug tests even after Brianna was initially detained. Father also took no steps to address his drug use—the sole reason Brianna was detained at the beginning of the Department's investigation—and refused to agree to a safety plan or "anything else" to protect Brianna from his drug use before the jurisdiction and disposition hearing. And all of this occurred *after* Brianna was declared a dependent of the court in her prior dependency case and removed from father's custody because of father's drug use.

Although father told the Department he believed he could quit using methamphetamine if he stopped working and living at the motel, he had yet to leave that place by the time of the jurisdiction hearing. As we explained above, father's habit of using methamphetamine with strangers at the motel where he and Brianna lived created a dangerous living situation for the child.

13

On this record, it is not reasonably probable that had the court made the necessary findings under section 361, subdivision (e), it would have found it would be safe to return Brianna to father's custody or that there were reasonable alternatives to removal.

**3.  The court's implied ICWA finding is supported by substantial evidence.**

Finally, father contends the court erred when it did not make an express finding at the jurisdiction and disposition hearing about whether ICWA applies to Brianna's case. We disagree.

In August 2018, during Brianna's prior dependency case, father submitted an "ICWA-020" form stating he had no knowledge of any Native American ancestry in his family. The court in that case found ICWA did not apply.

In August 2020, father submitted a new ICWA-020 form, stating that Brianna "is or may be a member of, or eligible for membership in, a federally recognized Indian tribe." Father listed Brianna's paternal great aunt as someone who might have information about his family's possible Native American ancestry. The court ordered the Department to follow up on father's claim of possible Native American ancestry and to mail "ICWA-030" notices to the appropriate tribes.

In September 2020, the Department contacted Brianna's paternal great aunt. The great aunt stated she did not belong to any Native American tribes and that there is no Native American ancestry in Brianna's family. According to the great aunt, the family is from El Salvador. She thought father may have been confused by the questions on the ICWA-020 form and stated that she was born in El Salvador, "has nothing to do with Native

14

Americans and as far as she knows no one in the family has any Native American ancestry[,] not even father."

The Department then interviewed father about his claim of possible Native American ancestry. Father told the social worker that he, his parents, his grandparents, and his "whole family" were born in El Salvador. Father didn't provide contact information for any other family members who might have knowledge of the family's ancestral background.

Father explained that the last time he was in court he had been asked questions that he didn't understand, so he provided the great aunt's information "because she would probably be able to answer and understand what was being asked." When the social worker asked father if he belonged to any Native American tribes, father replied that he did not know. The social worker then asked father if he was confused about "Latin American Indians such as Aztec, Mayan, or Inca," to which father responded that he "did not know and was still a bit confused." Father stated that the file from Brianna's prior dependency case should have information about whether ICWA applies to Brianna.

The court didn't make any express findings about ICWA's application to Brianna at the jurisdiction and disposition hearing.

A juvenile court has a continuing duty to determine whether ICWA applies to a child's dependency proceedings. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1530, disapproved of on another ground in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1003, fn. 4.) Although the record must show the court considered the issue, the court's finding about whether ICWA applies may be expressed or implied. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506 (*Asia L.*).) We review a court's ICWA

15

findings for substantial evidence. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.)

Here, the court didn't make any express findings at the jurisdiction and disposition hearing about ICWA's application to Brianna's case. Nevertheless, it is clear the court considered the issue before declaring Brianna a dependent.

The court ordered the Department at the detention hearing to follow up on father's claim that he may have Native American ancestry. The Department interviewed Brianna's great aunt, the only person father identified who could have knowledge of the family's possible Native American ancestry. The Department then followed up with father, asking him whether he had any additional information about his family's possible Native American ancestry. In the jurisdiction and disposition report filed in this case, the Department summarized its interviews with father and Brianna's great aunt, as well as the court's finding from Brianna's prior dependency case that ICWA did not apply to those proceedings. The court stated that it read and considered that report before it adjudicated Brianna's petition. Accordingly, the record shows the court considered whether ICWA applies to Brianna's proceedings. The court, therefore, implicitly found ICWA does not apply. (See *Asia L.*, *supra*, 107 Cal.App.4th at p. 506 [where record shows the court considered ICWA's application, reviewing court may conclude the court made an implicit finding that ICWA does not apply to the child's proceedings].)

Substantial evidence supports a finding that ICWA does not apply to Brianna's case. The great aunt stated unequivocally that no one in Brianna's family has Native American ancestry, and that the entire family is from El Salvador. Father confirmed

16

the great aunt's statements, telling the Department that he, his parents and grandparents, and the rest of his family are from El Salvador. Father told the social worker that he didn't know if his family has any Native American ancestry, and he couldn't identify anyone else in the family who could provide such information. Additionally, father stated in Brianna's prior case that there is no Native American ancestry in Brianna's family, and the court in that case found ICWA did not apply. On this record, there is ample evidence to support a finding that ICWA does not apply to Brianna's proceedings.

## DISPOSITION

The juvenile court's jurisdiction finding and disposition order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.

17